# U.S. District Court
## District of North Dakota (Western)
## CIVIL DOCKET FOR CASE #: <u>1:24−cv−00066−DMT−CRH</u>
### *Internal Use Only*

State of North Dakota et al v. United States Department of
Interior, The et al
Assigned to: Judge Daniel M. Traynor
Referred to: Magistrate Judge Clare R. Hochhalter
 related Case:  1:21−cv−00148−DMT−CRH
Cause: 05:702 Administrative Procedure Act

Date Filed: 04/24/2024
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**State of North Dakota**                    represented by   **Paul M. Seby**
Greenberg Traurig, P.A
1144 15th Street
Suite 3300
Denver, CO 80202
303−572−6584
Fax: 303−572−6540
Email: <u>sebyp@gtlaw.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Axt**
ND Office of the Attorney General
600 E. Boulevard Ave., Dept 125
Bismarck, ND 58505
701−328−2210
Email: <u>pjaxt@nd.gov</u>
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Montana**                         represented by   **Christian Brian Corrigan**
Montana Attorney General's Office
Helena
P.O. Box 201401
215 North Sanders
59620
Helena, MT 59601
406−444−2707
Email: <u>christian.corrigan@mt.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Texas**                           represented by   **Christopher Lee Lindsey**
Office of the Attorney General of Texas

PO Box 12548, Capitol Station
Austin, TX 78711
512–463–2080
Fax: 512–495–9139
Email: christopher.lindsey@oag.texas.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**State of Wyoming**                    represented by    **D. David DeWald**
Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
307–777–3535
Email: david.dewald@wyo.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Travis Jordan**
Wyoming Attorney General's Office
Water & Natural Resources Division
2320 Capitol Avenue
Cheyenne, WY 82002
307–777–3539
Email: tsjordan@wyoming.com
*TERMINATED: 09/30/2024*

**Plaintiff**

**State of Utah**                       represented by    **Kathy A.F. Davis**
Attorney General
Public Lands Section
1594 W North Temple #300
Third Floor
Salt Lake City, UT 84116
801–888–1876
Email: kathydavis@agutah.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States Department of Interior,**    represented by    **Erik Robert Van de Stouwe**
**The**
DOJ–Enrd
150 M Street NE
Washington, DC 20002
202–341–8782
Email: erik.van.de.stouwe@usdoj.gov
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Michael Sawyer**
U.S. Department of Justice
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044–7611
202–514–5273
Email: michael.sawyer@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Samuel B. Stratton**
DOJ–Enrd
150 M Street NE
Washington, DC 20002
202–514–6535
Email: samuel.stratton@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Debra Ann Haaland**<br>*in her official capacity as Secretary of Interior* | represented by | **Erik Robert Van de Stouwe**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael Sawyer**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Samuel B. Stratton**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Bureau of Land Management, The** | represented by | **Erik Robert Van de Stouwe**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael Sawyer**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Samuel B. Stratton**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Tracy Stone Manning**<br>*in her official capacity as the Director of the Bureau of Land Management* | represented by | **Erik Robert Van de Stouwe**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Michael Sawyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel B. Stratton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | |
|---|---|
| **Sonya Germann**<br>*in her official capacity as the Director*<br>*the Montana−Dakotas Bureau of Land*<br>*Management* | represented by   **Erik Robert Van de Stouwe**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Michael Sawyer**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Samuel B. Stratton**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 04/24/2024 | 1 | COMPLAINT against Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The (Filing fee $405, receipt number 100002058) filed by State of North Dakota. (Attachments: # 1 A – Final Rule, # 2 B – North Dakota Resource Management Plan and Environmental Impact Statement, # 3 C – Comments of the Industrial Commission of North Dakota, # 4 Civil Cover Sheet)(jb) (Entered: 04/25/2024) |
| 04/25/2024 | 2 | Summons Issued as to Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The, U.S. Attorney and U.S. Attorney General (jb) (Entered: 04/25/2024) |
| 04/26/2024 | 3 | NOTICE of Appearance by Erik Robert Van de Stouwe on behalf of All Defendants (Van de Stouwe, Erik) (Entered: 04/26/2024) |
| 05/09/2024 | 4 | NOTICE of Appearance by Michael Sawyer on behalf of All Defendants (Sawyer, Michael) (Entered: 05/09/2024) |
| 05/09/2024 | 5 | MOTION to Change Venue *to the United States District Court for the District of Wyoming* by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A – Twin Metals Order)(Sawyer, Michael) Modified on 5/10/2024 to add filer (United States Department of Interior, The) and replaced Exhibit A to remove overlapping headers. (jb) (Entered: 05/09/2024) |
| 05/10/2024 | | DOCKET CORRECTION re: 5 Motion to Change Venue to the United States District Court for the District of Wyoming. Clerk's office added filer (United States Department of Interior, The) and replaced Exhibit A to remove overlapping headers. (jb) (Entered: 05/10/2024) |

| 05/10/2024 | 6 | *RESTRICTED – WRONG EVENT SELECTED* SUMMONS Returned Executed by State of North Dakota. Bureau of Land Management, The served on 4/29/2024, answer due 5/20/2024; Sonya Germann served on 4/30/2024, answer due 5/21/2024; Debra Ann Haaland served on 4/29/2024, answer due 5/20/2024; Tracy Stone Manning served on 4/29/2024, answer due 5/20/2024; United States Department of Interior, The served on 4/29/2024, answer due 5/20/2024 (Attachments: # 1 Exhibit Returns of Service)(Seby, Paul) Modified on 5/13/2024 to restrict access (mf) (Entered: 05/10/2024) |
|---|---|---|
| 05/10/2024 | 7 | AMENDED COMPLAINT *FOR REVIEW OF FINAL AGENCY ACTION* Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The filed by State of Texas, State of Wyoming, State of Montana, State of North Dakota, State of Utah. (Attachments: # 1 Attachment A – Waste Prevention, production Subject to Royalties, and Resource Conservation, # 2 Attachment B – North Dakota Resource Management Plan and Environmental Impact Statement (July 1987), # 3 Attachment C – Comments of the Industrial commission of North Dakota BLM–2022–003–3270 (Jan. 30, 2023))(Seby, Paul) Modified on 5/13/2024 to add State of Utah as a filer, added descriptions to the attachments and removed 'exhibit' reference from the attachments. NEF Regenerated (mf) (Entered: 05/10/2024) |
| 05/10/2024 | 8 | SUMMONS Returned Executed by State of North Dakota. Bureau of Land Management, The served on 5/8/2024, answer due 7/8/2024; Sonya Germann served on 5/8/2024, answer due 7/8/2024; Debra Ann Haaland served on 5/8/2024, answer due 7/8/2024; Tracy Stone Manning served on 5/8/2024, answer due 7/8/2024; United States Department of Interior, The served on 5/8/2024, answer due 7/8/2024. (Attachments: # 1 Proof of Service documents on 4/30/2024, # 2 Proof of Service documents on 5/8/2024)(mf) (Entered: 05/13/2024) |
| 05/13/2024 | | DOCKET CORRECTION re: 6 Summons Returned Executed. Wrong event selected. Clerk's Office restricted access to document and re–filed as Summons Returned Executed as to the USA at 8 . Re: 7 Amended Complaint. Clerk's Office added State of Utah as a filer, added descriptions to the attachments and removed 'exhibit' reference from the attachments. (mf) (Entered: 05/13/2024) |
| 05/14/2024 | 9 | MOTION to Change Venue by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A – Twin Metals Order)(Van de Stouwe, Erik) (Attachment 2 replaced on 5/15/2024 to correct overlapping headers. Clerk's office added exhibit letter. Regenerated NEF.) (rh) (Entered: 05/14/2024) |
| 05/28/2024 | 10 | MOTION for Preliminary Injunction *of Plaintiff States'* by State of North Dakota. (Attachments: # 1 Memorandum in Support of Plaintiffs States' Motion for Preliminary Injunction, # 2 Exhibit #1 Helms Declaration, # 3 *RESTRICTED–EXHIBIT SHOULD HAVE BEEN FILED AS SEPARATE ATTACHMENT TO DECLARATION* Exhibit #2 Johnson Declaration, # 4 Exhibit #3 Glatt Declaration, # 5 Exhibit #4 Parfitt Declaration)(Seby, Paul) Modified on 5/29/2024 to restrict access to Exhibit 2 (cjs). (Entered: 05/28/2024) |
| 05/28/2024 | 11 | MOTION for Hearing re 10 MOTION for Preliminary Injunction *of Plaintiff States'* by State of North Dakota. (Seby, Paul) (Entered: 05/28/2024) |
| 05/28/2024 | 12 | RESPONSE to Motion re 9 MOTION to Change Venue *of Plaintiff States* filed by State of North Dakota. (Seby, Paul) (Entered: 05/28/2024) |

| | | |
|---|---|---|
| 05/28/2024 | 13 | SUPPLEMENT (Exhibit 2 – Declaration of Redge Johnson to document: 10 MOTION for Preliminary Injunction *of Plaintiff States'* by State of North Dakota. (Attachments: # 1 Exhibit 1–Map)(cjs) (Entered: 05/29/2024) |
| 05/29/2024 | | DOCKET CORRECTION re: [10–3] Exhibit 2 – Johnson Declaration to Motion for Preliminary Junction. Exhibit 1–Map should have been as a separate attachment to Exhibit 2–Johnson Declaration. Clerk's Office restricted access to document and re–filed at 13 . (cjs) (Entered: 05/29/2024) |
| 05/29/2024 | 14 | NOTICE of Hearing: Scheduling Conference set for 5/29/2024 at 02:30 PM in Bismarck Courtroom 1 before Judge Daniel M. Traynor. (CK) (Entered: 05/29/2024) |
| 05/29/2024 | 15 | (Text Only) ORDER by Judge Daniel M. Traynor granting 11 Motion for Hearing and setting briefing schedule. Motion Hearing set for 6/18/2024 at 09:00 AM in Bismarck Courtroom 1 before Judge Daniel M. Traynor (1/2 day). Responses to 10 Motion for Preliminary Injunction due 6/11/2024. Replies due 6/14/2024. (CK) (Entered: 05/29/2024) |
| 05/29/2024 | 16 | Minute Entry for proceedings held before Judge Daniel M. Traynor: Scheduling Conference held on 5/29/2024. (Court Reporter KMK) (rm) (Entered: 05/29/2024) |
| 05/29/2024 | | Set/Reset Deadlines as to 10 MOTION for Preliminary Injunction *of Plaintiff States'*. Responses due by 6/11/2024 Replies due by 6/14/2024. (jb) (Entered: 05/29/2024) |
| 06/04/2024 | 17 | REPLY to Response to Motion re 9 MOTION to Change Venue filed by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Van de Stouwe, Erik) (Entered: 06/04/2024) |
| 06/11/2024 | 18 | MOTION for Leave to File Excess Pages by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Van de Stouwe, Erik) (Entered: 06/11/2024) |
| 06/11/2024 | 19 | (Text Only) ORDER by Judge Daniel M. Traynor granting 18 Motion for Leave to File Excess Pages.The Defendants' Response brief shall not exceed 35 pages. (CK) (Entered: 06/11/2024) |
| 06/11/2024 | 20 | RESPONSE to Motion re 10 MOTION for Preliminary Injunction *of Plaintiff States'* filed by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Attachments: # 1 Exhibit 1 Declaration of Radford Schantz, # 2 Exhibit 2 Declaration of Michael Sawyer, # 3 Exhibit 3 NTL–4A, # 4 Exhibit 4 Onshore Orders 3–5, # 5 Exhibit 5 BLM Manual 3160–9, # 6 Exhibit 6 Regulatory Impact Analysis, # 7 Exhibit 7 BLM Manual 3160–5)(Van de Stouwe, Erik) (Entered: 06/11/2024) |
| 06/12/2024 | 21 | NOTICE of Appearance by Samuel B. Stratton on behalf of All Defendants (Stratton, Samuel) (Entered: 06/12/2024) |
| 06/13/2024 | 22 | MOTION for Leave to File Excess Pages *by Plaintiff States* by State of North Dakota. (Seby, Paul) (Entered: 06/13/2024) |
| 06/14/2024 | 23 | (Text Only) ORDER by Judge Daniel M. Traynor granting 22 Motion for Leave to File Excess Pages. North Dakota's Reply shall not exceed 22 pages. (AV) (Entered: 06/14/2024) |
| 06/14/2024 | 24 | |

| | | REPLY to Response to Motion re 10 MOTION for Preliminary Injunction *of Plaintiff States' by Plaintiff States* filed by State of North Dakota. (Attachments: # 1 Exhibit #1 North Dakota Communitization Agreement, # 2 Exhibit #2 Wyoming Communitization Agreement, # 3 Exhibit #3 Natural Gas Deducts Excerpt from North Dakota Industrial Commission June 14 −2023 Hearing, # 4 Exhibit #4 North Dakota Idle Wells Chart)(Seby, Paul) (Entered: 06/14/2024) |
|---|---|---|
| 06/18/2024 | 25 | Minute Entry for proceedings held before Judge Daniel M. Traynor: Motion Hearing held on 6/18/2024 re 5 MOTION to Change Venue to the District of Wyoming and 9 RENEWED MOTION to Change Venue to the District of Wyoming filed by defendants, 10 MOTION for Preliminary Injunction *of Plaintiff States* filed by State of North Dakota. (Court Reporter RC) (Attachments: # 1 Plaintiffs Exhibit 1 − Order of the Commission No. 24665, # 2 Plaintiffs Exhibit 2 − Commission Order 24665/Guidance Version 9−22−2020, # 3 Defendants Exhibit 1 − June 2024 Director's Cut and April 2024 Production Numbers, # 4 Defendants Exhibit 2 − Gas Capture dated 6/14/24, # 5 Defendants Exhibit 3 − Oil and Gas Activity map in Western ND, # 6 Defendants Exhibit 4 − Federal Minerals and Affected Drilling/Spacing Units map, # 7 Defendants Exhibit 5 − Excerpts from maps, # 8 Defendants Exhibit 6 − ND Drilling and Spacing Units map, # 9 Defendants Exhibit 7 − Excerpts from ND Drilling and Spacing Unit Map, # 10 Defendants Exhibit 8 − Communitization Agreement − ECF Doc. 24−2, # 11 Pages 20 and 21 of ECF Doc. 24) (rm) (Entered: 06/18/2024) |
| 06/20/2024 | 26 | *RESTRICTED − WRONG EVENT SELECTED* SUMMONS Returned Executed by State of North Dakota. All Defendants (Attachments: # 1 Exhibit #1 Return of Service on US Attorney's Office Civil Process Clerk)(Seby, Paul) Modified to restrict access on 6/21/2024 (sc). (Entered: 06/20/2024) |
| 06/20/2024 | 27 | SUPPLEMENT *Amended Proof of Service* to document: 8 Summons Returned Executed as to USA by State of North Dakota. (Attachments: # 1 Exhibit 1: Return of Service on US Attorney's Office Civil Process Clerk)(sc) (Entered: 06/21/2024) |
| 06/21/2024 | | DOCKET CORRECTION re: 26 SUMMONS Returned Executed. Wrong event selected. Clerk's Office restricted access to document and refiled as Supplement at 27 . (sc) (Entered: 06/21/2024) |
| 06/21/2024 | 28 | SUPPLEMENT to document: 25 Motion Hearing by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Attachments: # 1 Comments of the Mandan, Hidatsa, and Arikara Nation on Proposed Rule, Waste Prevention, Production Subject to Royalties, and Resource Conservation, 87 Fed. Reg. 73,588 (Nov. 30, 2022))(Van de Stouwe, Erik) Modified to remove exhibit language from docket text on 6/24/2024 (sc). (Entered: 06/21/2024) |
| 06/24/2024 | | DOCKET CORRECTION re: 28 SUPPLEMENT. Clerk's Office removed exhibit language from docket text. (sc) (Entered: 06/24/2024) |
| 06/28/2024 | 29 | OBJECTION to 27 SUPPLEMENT by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Attachments: # 1 Exhibit A − Email to Erik Van De Stouwe RE: Docket No. 8 # 2 Exhibit B − Declaration of Jacqueline Haag)(Van de Stouwe, Erik) Modified on 7/1/2024 to add link, remove exhibit letters from attachments, and add descriptions to attachments. (sj). Modified on 7/2/2024 to add 'Exhibit' reference and letters. (rh). (Entered: 06/28/2024) |
| 07/01/2024 | | |

| | | |
|---|---|---|
| | | DOCKET CORRECTION re: 29 OBJECTION. Clerk's Office added a link, removed exhibit letters from attachments, and added descriptions to attachments. (sj) (Entered: 07/01/2024) |
| 07/03/2024 | 30 | NOTICE by State of North Dakota re 29 Objection,, *Plaintiffs' Response to Defendants' Objection to Plaintiffs' Amended Proof of Service and Plaintiffs' Second Amended Proof of Service* (Attachments: # 1 Exhibit #1 Proof of Service to Local U.S. Attorney, # 2 Exhibit #2 Email on Service)(Seby, Paul) (Entered: 07/03/2024) |
| 07/10/2024 | 31 | NOTICE by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The (Van de Stouwe, Erik) (Entered: 07/10/2024) |
| 07/15/2024 | 32 | NOTICE OF FILING OF TRANSCRIPT of motion hearing held June 18, 2024 (rc) (Entered: 07/15/2024) |
| 07/15/2024 | 33 | TRANSCRIPT of Motion Hearing held on June 18, 2024, before Judge Daniel M. Traynor. Court Reporter/Transcriber Ronda Colby, Telephone number 701–530–2309. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Notice of Intent to Request Redaction due 7/22/2024. Redaction Request due 8/5/2024. Redacted Transcript Deadline set for 8/15/2024. Release of Transcript Restriction set for 10/15/2024. (rc) (Entered: 07/15/2024) |
| 07/15/2024 | 34 | MOTION to Strike 31 Notice (Other) *or in the Alternative, for Leave to Respond to Defendants' Notice of New Authority filed by Plaintiff States* by State of North Dakota. (Attachments: # 1 Exhibit #1 Plaintiff States' [Proposed] Response to Defendants' Notice of New Authority)(Seby, Paul) (Entered: 07/15/2024) |
| 07/15/2024 | 35 | MOTION for Leave to File by State of North Dakota. See document 34 . (cjs) (Entered: 07/16/2024) |
| 07/16/2024 | | DOCKET CORRECTION re: 34 Motion to Strike. Multiple relief document filed as one relief. Clerk's Office filed Motion for Leave to File at 35 . (cjs) (Entered: 07/16/2024) |
| 07/16/2024 | 36 | ORDER by Judge Daniel M. Traynor denying 34 MOTION to Strike 31 Notice (Other) and granting 35 Motion for Leave to File, *Alternative Motion for Leave to Respond to Defendants' Notice of New Authority filed by Plaintiff States*. Plaintiffs shall promptly file their Response. The Defendants have 14 days to file any Reply. (CK) (Main Document 36 replaced on 7/16/2024 to correct typographical errors.) Regenerated NEF. (jb) (Entered: 07/16/2024) |
| 07/16/2024 | 37 | BRIEF re 31 Notice (Other) *Plaintiff States' Response to Defendants' Notice of New Authority* by State of North Dakota. (Seby, Paul) (Entered: 07/16/2024) |
| 07/30/2024 | 38 | *RESTRICTED–WRONG EVENT SELECTED* REPLY to Response to Motion re 35 MOTION for Leave to File filed by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Van de Stouwe, Erik) Modified on 7/31/2024 to restrict access (cjs). (Entered: 07/30/2024) |
| 07/30/2024 | 39 | BRIEF re 31 Notice (Other) by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (cjs) (Entered: 07/31/2024) |

| | | |
|---|---|---|
| 07/31/2024 | | DOCKET CORRECTION re: 38 Reply to Response to Motion. Wrong event selected. Clerk's Office restricted access to document and re−filed as Brief at 39 . (cjs) (Entered: 07/31/2024) |
| 07/31/2024 | 40 | NOTICE by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The *Lodging Administrative Record Volume* (Attachments: # 1 Declaration of Amanda Fox, # 2 Administrative Record Index)(Van de Stouwe, Erik) (Entered: 07/31/2024) |
| 08/02/2024 | 41 | (Filed Conventionally) SUPPLEMENT First Installment of the Administrative Record to document: 40 Notice (Other) by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (mf) (Entered: 08/02/2024) |
| 08/15/2024 | 42 | MOTION for Leave to File (Notice of Related Case Development) by State of North Dakota (Attachments: # 1 Plaintiffs States' Proposed Notice of Related Case Development, # 2 #1 10th Circuit Dismissal and Vacatur Order)(Seby, Paul) Modified on 8/16/2024 to correct event type and clean up docket text. NEF Regenerated. (sj). (Entered: 08/15/2024) |
| 08/16/2024 | | DOCKET CORRECTION re: 42 MOTION for Leave to File. Document should have been filed as a motion. Clerk's Office corrected the event from NOTICE to MOTION for Leave to File and regenerated the NEF. (sj) (Entered: 08/16/2024) |
| 08/19/2024 | 43 | (Text Only) ORDER by Judge Daniel M. Traynor granting 42 Motion for Leave to File (Notice of Related Case Development). Counsel shall promptly file the proposed documents. (CK) (Entered: 08/19/2024) |
| 08/19/2024 | 44 | NOTICE by State of North Dakota *Plaintiff States' Notice of Related Case Development* (Attachments: # 1 Exhibit 1 − 10th Circuit Dismissal and Vacatur Order)(Seby, Paul) Modified on 8/21/2024 to add 'Exhibit' to attachment description. (sj). (Entered: 08/19/2024) |
| 08/21/2024 | | DOCKET CORRECTION re: 44 NOTICE. Clerk's Office added 'Exhibit' reference to attachment description. (sj) (Entered: 08/21/2024) |
| 08/22/2024 | 45 | ANSWER to 7 Amended Complaint by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The.(Van de Stouwe, Erik) (Entered: 08/22/2024) |
| 08/27/2024 | 46 | MOTION for Leave to File by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Attachments: # 1 Defendants' Proposed Response to Plaintiffs' Notice of Related Case Development)(Van de Stouwe, Erik) (Entered: 08/27/2024) |
| 08/28/2024 | 47 | (Text Only) ORDER by Judge Daniel M. Traynor granting 46 Motion for Leave to File. Counsel shall promptly file the proposed document. (CK) (Entered: 08/28/2024) |
| 08/28/2024 | 48 | RESPONSE to Motion re 42 MOTION for Leave to File filed by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (Van de Stouwe, Erik) (Entered: 08/28/2024) |
| 08/29/2024 | 49 | NOTICE by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The *Lodging Administrative Record* (Attachments: # 1 Second Declaration of Amanda Fox, # 2 |

| | | Complete Record Index)(Van de Stouwe, Erik) (Entered: 08/29/2024) |
|---|---|---|
| 08/30/2024 | 50 | (Filed Conventionally) SUPPLEMENT (USB drive containing the complete Administrative Record) to document: 49 Notice (Other), by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, United States Department of Interior, The. (jb) (Entered: 08/30/2024) |
| 08/30/2024 | 51 | MOTION for Entry of a Scheduling Order by Bureau of Land Management, The, Sonya Germann, Debra Ann Haaland, Tracy Stone Manning, and United States Department of Interior, The. (Attachments: # 1 Exhibit A: Order Granting in Part Motion for Briefing Schedule, 1:21−cv−148)(Van de Stouwe, Erik) (Attachment 1 replaced to correct overlapping headers on 9/3/2024) (sc). Modified to replace attachment and clarify attachment description on 9/3/2024. NEF regenerated (sc). (Entered: 08/30/2024) |
| 09/03/2024 | | DOCKET CORRECTION re: 51 MOTION for Entry of a Scheduling Order. Clerk's Office added exhibit label and clarified attachment description. (sc) (Entered: 09/03/2024) |
| 09/03/2024 | 52 | RESPONSE to Motion re 51 MOTION for Entry of a Scheduling Order *by Plaintiff States* filed by State of North Dakota. (Seby, Paul) (Entered: 09/03/2024) |
| 09/04/2024 | 53 | ORDER by Magistrate Judge Clare R. Hochhalter granting 51 Motion for Scheduling Order. Motions re completion of administrative record due by 9/16/2024. Plaintiff's motion for summary judgment due by 10/16/2024. Defendants' response and cross−motion for summary judgment due by 11/15/2024. (BG) (Main Document 53 replaced on 9/4/2024 to correct error in document) NEF Regenerated (mf) (Entered: 09/04/2024) |
| 09/12/2024 | 54 | ORDER by Judge Daniel M. Traynor finding as moot 5 Motion to Change Venue; denying 9 Motion to Change Venue; granting 10 Motion for Preliminary Injunction. (CK) (Entered: 09/12/2024) |
| 09/27/2024 | 55 | NOTICE of Substitution of Attorney by Travis Jordan on behalf of State of Wyoming (Jordan, Travis) (Entered: 09/27/2024) |
| 10/16/2024 | 56 | MOTION for Summary Judgment *by Plaintiff States* by State of North Dakota. (Attachments: # 1 Plaintiff States' Memorandum in Support of Motion for Summary Judgment)(Seby, Paul) (Entered: 10/16/2024) |
| 11/11/2024 | 57 | *RESTRICTED − WRONG EVENT SELECTED* NOTICE OF APPEAL by United States Department of Interior, The, Debra Ann Haaland, Bureau of Land Management, The, Tracy Stone Manning, Sonya Germann. (Van de Stouwe, Erik) Modified on 11/12/2024 to restrict access. (jb) (Entered: 11/11/2024) |
| 11/11/2024 | 58 | NOTICE OF INTERLOCUTORY APPEAL as to 54 Order on Motion to Change Venue,, Order on Motion for Preliminary Injunction by United States Department of Interior, The, Debra Ann Haaland, Bureau of Land Management, The, Tracy Stone Manning, Sonya Germann. Filing fee Waived. (jb) (Entered: 11/12/2024) |
| 11/12/2024 | 59 | Transmittal of Notice of Appeal Supplement to 8th Circuit Court of Appeals re 58 Notice of Interlocutory Appeal, (jb) (Entered: 11/12/2024) |
| 11/12/2024 | | DOCKET CORRECTION re: 57 Notice of Appeal. Wrong event selected. Clerk's office restricted access to document and re−filed as Notice of Interlocutory Appeal at 58 . (jb) (Entered: 11/12/2024) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| State of North Dakota; State of Montana; State of Texas; State of Wyoming; and State of Utah, | | |
| Plaintiffs, | | |
| vs. | | |
| The United States Department of Interior; Debra Ann Haaland, in her official capacity as Secretary of Interior; The Bureau of Land Management; Tracy Stone Manning, in her official capacity as the Director of the Bureau of Land Management; and Sonya Germann, in her official capacity as the Director of the Montana-Dakotas Bureau of Land Management, | | Case No. 1:24-cv-00066 |
| Defendants. | | |

---

**ORDER DENYING MOTION TO CHANGE VENUE AND
GRANTING MOTION FOR PRELIMINARY INJUNCTION**

---

[¶1]    THIS MATTER comes before the Court on two motions. First, the Defendants filed a Motion to Change Venue on May 14, 2024.[1] Doc. No. 9. The Plaintiffs filed their Response on May 28, 2024. Doc. No. 12. The Defendants filed a Reply on June 4, 2024. Doc. No. 17. Also before the Court is Plaintiffs' Motion for Preliminary Injunction filed on May 28, 2024. Doc. No. 10. The Defendants filed a Response on June 11, 2024. Doc. No. 20. The Plaintiffs filed a Reply on June 14, 2024. Doc. No. 24. A hearing was held on both Motions on June 18, 2024. Doc. No. 25.

---

[1] This is the Defendants' second Motion to Change Venue. The first was filed on May 9, 2024, prior to the filing of the Amended Complaint. Once the Amended Complaint was filed, the Defendants re-filed their motion to conform to the Amended Complaint. The first Motion to Change Venue is, therefore, deemed **MOOT**.

For the reasons set forth below, the Defendants' Motion to Change Venue is **DENIED** and the Plaintiffs' Motion for Preliminary Injunction is **GRANTED**.

## BACKGROUND

[¶2]    The findings in this order are not final and subject to revision based upon the evidence as it comes in during the pendency of this case. In 2016, the Bureau of Land Management ("BLM") promulgated the first variation of the "Waste Prevention, Production Subject to Royalties, and Resource Conservation" ("2016 Rule")[2] Doc. No. 7, ¶ 48. Among other requirements, the 2016 Rule mandated oil and gas well operators flare rather than vent excess methane gas. See id. ¶¶ 50–51. The States of North Dakota, Montana, Wyoming, and Texas challenged the 2016 Rule in the United States District Court for the District of Wyoming. Id. ¶ 48. The States in the Wyoming case were initially unsuccessful in securing a preliminary injunction, but the court in that case ultimately agreed the 2016 Rule was unlawful. Id. ¶¶ 49–50; see also Wyoming et al. v. U.S. Dep't of Interior et al., Nos. 2:16-cv-0285, 2:16-CV-0280, 2017 WL 161428 (D. Wyo. Jan. 16, 2017) (denying preliminary injunction); Wyoming et al. v. U.S. Dep't of Interior et al., 493 F. Supp. 3d 1046 (D. Wyo. 2020) (vacating relevant portions 2016 Rule).[3]

[¶3]    On April 10, 2024, the BLM published its new version of the "Waste Prevention, Production Subject to Royalties, and Resource Conservation" Rule ("2024 Rule"). Doc. Nos. 7, p. 1; 1-1 (2024 Rule). Relevant here, the 2024 Rule continues to mandate flaring of excess gas rather than venting for the purpose of preventing waste and conserving resources. Doc. No. 7, ¶ 54 (citing 43 C.F.R. § 3179.50(a)).

---

[2] 81 Fed. Reg. 83,008 (Nov. 18, 2016).
[3] The final order from the District of Wyoming was appealed, but on August 13, 2024, the Tenth Circuit Court of Appeals vacated the order because the 2016 Rule was replaced in 2024. Wyoming et al. v. U.S. Dep't of Interior et al., Nos. 20-8072 and 8073, 2024 WL 3791170 (10th Cir.).

[¶4]    The Plaintiffs challenged the 2024 Rule in this Court on April 24, 2024. Doc. No. 1. On May 10, 2024, the Plaintiffs filed an Amended Complaint adding the State of Utah as a party to this action and assert five claims for relief: (1) the 2024 Rule exceeds BLM's statutory authority under the Mineral Leasing Act ("MLA"), 30 U.S.C. § 180 *et seq.* ; (2) the 2024 Rule exceeds BLM's authority under the Federal Oil and Gas Royalty Management Act ("FOGRMA"), 30 U.S.C. § 1751 *et seq.*; (3) the 2024 Rule violates the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.*; (4) the 2024 Rule violates the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq.*; and (5) the 2024 Rule is Arbitrary and Capricious under 5 U.S.C. § 706. Doc. No. 7.

**<u>DISCUSSION</u>**

### I.   Motion to Change Venue

[¶5]    The Defendants move to change venue to the United States District Court for the District of Wyoming. In arguing for a venue transfer, Defendants contend (1) this case could have been filed in the District of Wyoming in the first place; (2) transferring to the District of Wyoming will serve the interest of justice because (a) the Wyoming court is already familiar with the 2016 Rule, the changes made by Defendants in the 2024 Rule are in response to the District of Wyoming's decision, and transfer would benefit judicial economy; and (b) the benefits to judicial economy outweigh Plaintiffs' forum choice; (3) the District of Wyoming is a more convenient forum; and (4) the District of Wyoming has over 100 fewer cases per judgeship. The Defendants also contend the Plaintiffs have engaged in impermissible forum shopping.

[¶6]    The Plaintiffs argue venue is proper in the District of North Dakota because (1) the convenience of the witnesses weighs against transfer; (2) the interest of justice weigh in favor of denying transfer; (3) the Court should give deference to the Plaintiffs choice of forum; (4) judicial

- 3 -

economy will be served by denying transfer because the 2016 Rule is no longer in effect and the

2024 Rule has its own separate administrative record; (5) there is a negligible difference in costs

to litigate in North Dakota versus Wyoming; (6) there is no risk of conflicting judgments; and (7)

the Plaintiffs are not impermissibly forum shopping.

[¶7]     Pursuant to 28 U.S.C. Section 1404(a), "[f]or the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought or to any district or division to which all parties have consented."

Generally, a domestic plaintiff's choice of forum is given "considerable deference" and "the party

seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is

warranted." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).  When

deciding a motion to transfer pursuant to Section 1404(a), the Court must consider three factors:

"(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of

justice." Id. at 691. A determination on transfer requires a "case-by-case evaluation of the

particular circumstances at hand and a consideration of all relevant factors." Id.

[¶8]     The Court has reviewed the entire record and concludes venue is proper in the District of

North Dakota and the Defendants have not met their burden to show transfer is warranted. The

convenience of the Parties and the convenience of the witnesses are neutral. With the exception of

some Plaintiff witnesses, North Dakota is no more or less convenient of a forum than Wyoming.

The interest of justice also favors denying the change of venue. Because the Plaintiffs lodge a

challenge to a new rule, either court will have to review the voluminous administrative record for

the 2024 Rule. Judicial economy will not be served in either North Dakota or Wyoming. A

significant amount of the land at issue that produces oil is in North Dakota.[4] The docket caseload argument is meritless. The Defendants have failed to show any one of these factors weighs in favor of transferring venue to the District of Wyoming. Finally, Plaintiffs are not impermissibly forum shopping.[5] Plaintiffs have a right to choose their forum. There is nothing improper in the forum of the District of North Dakota. Indeed, North Dakota appears to have a greater interest in the outcome. The Defendants have not provided a sufficient basis to warrant transferring this case to the District of Wyoming.

[¶9]    Accordingly, the Defendants' Renewed Motion to Change Venue is **DENIED**.

## II.    Motion for Preliminary Injunction

### A.  Standard of Review

[¶10]    In deciding whether to issue a preliminary injunction, the Court considers four distinct factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Central to this analysis "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. "[N]o single factor is determinative," but the probability of success on the merits "is the most significant" factor. Id.; Home Instead, Inc. v.

---

[4] Defendants argue Wyoming has more of an interest in the outcome of this case because it has more federal lands. However, the federal lands subject to pooling orders appears, based on the preliminary record, to be more significant in North Dakota, even though North Dakota has less federal land generally.

[5] In seeking to transfer venue to the District of Wyoming, the same argument could apply to the Defendants who arguably are asking to change venue in hopes of receiving a more favorable outcome in Wyoming. One could argue the Defendants desire the District of Wyoming to have the same judge review the 2024 Rule, which they repeatedly claim abides by the Wyoming Court's final order enjoining the 2016 Rule.

<u>Florance</u>, 721 F.3d 494, 497 (8th Cir. 2013). Regardless, the Court is required to consider all four of the <u>Dataphase</u> factors. <u>See</u> <u>Home Instead, Inc.</u>, 721 F.3d at 500.

### B. Probability of Success on the Merits

[¶11]   Plaintiffs argue they are likely to succeed on the merits of their claims because (1) the 2024 Rule exceeds BLM's statutory authority under the Mineral Leasing Act ("MLA"), the Federal Oil and Gas Royalty Management Act ("FOGRMA"), and the Clean Air Act ("CAA") because the 2024 Rule is an unlawful regulation of air emissions; (2) the 2024 Rule unlawfully regulates state and private mineral interests; (3) invoking new federal statutes cannot save the 2024 Rule. The Plaintiffs also argue the 2024 Rule is arbitrary and capricious because (1) BLM reversed itself on the communitization issue without adequate explanation; (2) BLM failed to adequately explain how the air emission requirements are justified as cost-effective "waste prevention" measures; (3) BLM fails to account for the possible decrease in royalties likely attributable to the 2024 Rule decreasing production; and (4) BLM failed to adequately respond to Plaintiffs comments.

[¶12]   The Defendants argue Plaintiffs are not likely to succeed on the merits of their claims because the 2024 Rule (1) complies with the relevant federal statutes; (2) has a stated purpose that is not a pretext for regulating operators' contributions to climate change; (3) properly regulates communitized production of oil and gas; and (4) properly regulates mineral leasing on Indian trust land. The Defendants further argue the 2024 Rule is not arbitrary and capricious because (1) BLM has been regulating onshore oil and gas producers operating under communitization agreements ("CAs") since at least 1978; (2) BLM provided sound economic analysis in support of the 2024 Rule; (3) Plaintiffs assertions regarding the effects of the 2024 Rule are speculative; and (4) BLM adequately responded to North Dakota's comments on the proposed 2024 Rule.

[¶13]   At this preliminary stage, the Plaintiffs have shown they are likely to succeed on the merits of their claim the 2024 Rule is arbitrary and capricious. When determining the probable success on the merits of the claims, the Court should not "apply the probability language with mathematical precision." Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 503 (8th Cir. 1987). The Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Id. (cleaned up) (citation omitted).

[¶14]   The Eighth Circuit has described the probability of success on the merits "as the most important of the four [Dataphase] factors." Jet Midwest International Co. v. Jet Midwest Group, LLC, 953 F.3d 1041, 1044 (8th Cir. 2020) (alteration in original) (quoting Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011)). In weighing this factor, the Court does not decide whether the movant "will ultimately win"; rather, the movant "must simply show a 'fair chance of prevailing.'" Id. (first quoting PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1142 (8th Cir. 2007); and then quoting Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). Whether a movant has shown a fair chance of prevailing does not mean the movant must "prove greater than fifty per cent likelihood that [it] will prevail on the merits." Id. (quotation marks omitted) (quoting Dataphase, 940 F.2d at 113). Under circumstances where the movant has no chance of succeeding, an injunction will not issue. Id. (quoting Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005)).

[¶15]   A movant does not need to show a likelihood of success on the merits of every claim; rather, a movant must establish a likelihood of success on the merits of a single claim. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F.Supp.2d 1073, 1080 (D.N.D. 2009) ("The Court finds at this preliminary stage of the litigation, and based on the limited information in the record, the

Conservancy has established a sufficient likelihood of success on the merits of its trademark infringement claim. The Court finds it is unnecessary to undertake an extensive review of the Conservancy's additional claims."); <u>Running Horse, LLC v. Rodenbough Trucking & Excavating, Inc.</u>, 2016 WL 8737867, at *3 (D.N.D. February 26, 2016) ("A likelihood of success on the merits of even one claim can be sufficient to satisfy the 'likelihood of success' <u>Dataphase</u> factor.").

[¶16]    The Eighth Circuit Court of appeals recently explained the arbitrary and capricious standard:

> Under the APA, a reviewing court sets aside an agency action if that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." <u>FCC v. Prometheus Radio Project</u>, 592 U.S. 414, 423(2021). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." <u>Id.</u> This standard is highly deferential to the agency, providing a narrow standard of review. <u>Org. for Competitive Mkts. v. U.S. Dep't of Agric.</u>, 912 F.3d 455, 459 (8th Cir. 2018). As we have explained, a decision is arbitrary and capricious if:

>> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise

> <u>McClung v. Paul</u>, 788 F.3d 822, 828 (8th Cir. 2015) (quoting <u>Motor Vehicle Mfrs. Ass'n v. State Farm Ins. Co.</u>, 463 U.S. 29, 43 (1983)). **Nor can we uphold agency action that is internally inconsistent or not reasonable and reasonably explained**. <u>See</u> <u>ANR Storage Co. v. F.E.R.C.</u>, 904 F.3d 1020, 1024 (D.C. Cir. 2018).

<u>Firearms Regulatory Accountability Coalition, Inc. v. Garland</u>, --- F.4th ----, 2024 WL 3737366, at *7 (8th Cir. 2024) (emphasis added).

[¶17]    Before considering whether the 2024 Rule, a brief outline of the relevant statutory framework is appropriate. The MLA is codified at 30 U.S.C. Section 181 *et seq.* "The broad purpose of the MLA was to provide incentives to explore new, unproven oil and gas areas through

noncompetitive leasing, while assuring through competitive bidding adequate compensation to the government for leasing in producing areas." Arkla Exploration Co. v. Texas Oil & Gas Corp., 734 F.2d 347, 358 (8th Cir. 1984). "The Act was intended to promote wise development of these natural resources and to obtain for the public a reasonable financial return on assets that 'belong' to the public." California Co. v. Udall, 296 F.2d 384, 388 (D.C. Cir. 1961). The Secretary of the Interior has authority to make "necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish purposes of [the MLA]." 30 U.S.C. § 189. The Secretary has further authority to require lessees of federal or Indian mineral interest to "use all reasonable precautions to prevent waste of oil or gas developed in the land." 30 U.S.C. § 225.

[¶18]    The Federal Land Policy and Management Act of 1976 ("FLPMA") is codified at 43 U.S.C. § 1701 *et seq.* FLPMA requires the Secretary of the Interior to "manage the public lands under principles of multiple use and sustained yield." 43 U.S.C. § 1732(a). "Multiple Use" is defined by FLPMA as

> the management of the public lands and their various resource values so that they are utilized in the combination that will best meet the present and future needs of the American people; making the most judicious use of the land for some or all of these resources or related services over areas large enough to provide sufficient latitude for periodic adjustments in use to conform to changing needs and conditions; the use of some land for less than all of the resources; a combination of balanced and diverse resource uses that takes into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values; and harmonious and coordinated management of the various resources without permanent impairment of the productivity of the land and the quality of the environment with consideration being given to the relative values of the resources and not necessarily to the combination of uses that will give the greatest economic return or the greatest unit output.

43 U.S.C. § 1702(c). FLPMA defines "sustained yield" as "the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the public lands consistent with multiple use." 43 U.S.C. § 1702(h). This principle "requires BLM

to control depleting uses over time, so as to ensure a high level of valuable uses in the future."

Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 58 (2004).

[¶19]   FOGRMA is codified at 30 U.S.C. § 1751 *et seq.* FOGRMA sets forth a system to collect

federal mineral royalties, specifically:

> [a]ny lessee is liable for royalty payment son oil or gas lost or wasted from a lease
> site when such loss or waste is due to negligence on the part of the operator, or due
> to the failure to comply with any rule or regulation, order or citation issued under
> this chapter or any mineral leasing law.

30 U.S.C. § 1756. The Secretary of the Interior is required to "prescribe such rules and regulations

as he deems reasonably necessary to carry out this Act." 30 U.S.C. § 1751.

[¶20]   Since the 2016 Rule, Congress passed the Inflation Reduction Act of 2022 ("IRA"), Pub.

L. No. 117-169, 136 Stat. 118. Relevant here, the IRA provided:

> (a) In general
> For all leases issued after August 16, 2022, except as provided in subsection (b),
> **royalties** paid for gas produced from Federal land and on the outer Continental
> Shelf **shall be assessed on all gas produced, including all gas** that is consumed
> or **lost by venting, flaring**, or negligent releases through any equipment during
> upstream operations.
>
> (b) Exception
> Subsection (a) shall not apply with respect to--
>> (1) gas vented or flared for not longer than 48 hours in an emergency
>> situation that poses a danger to human health, safety, or the environment;
>> (2) gas used or consumed within the area of the lease, unit, or communitized
>> area for the benefit of the lease, unit, or communitized area; or
>> (3) **gas that is unavoidably lost**.

30 U.S.C. § 1727 (emphasis added).

[¶21]   This case is an example of where the left hand of the government does not know what the

right hand of the government is doing. In 1970, Congress enacted the Clean Air Act ("CAA"),

which set up the framework by which the Environmental Protection Agency ("EPA") regulates air

emissions. The CAA created "a comprehensive national program that made States and the Federal

- 10 -

Government partners in the struggle against air pollution." General Motors Corp. v. United States, 596 U.S. 530, 532 (1990). As part of this state-federal cooperation, states prepare a state implementation plan ("SIP") outlining each State's plan for enforcing EPA's standards for emissions from stationary sources. 42 U.S.C. § 7410(a)(1) ("each State shall . . . adopt and submit . . . a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region (or portion thereof) within such State."). Congress has found, in the CAA, it is primarily the "responsibility of States and local governments" to prevent air pollution. 42 U.S.C. § 7401(a)(3). "Federal financial assistance and leadership is essential for the development of cooperative Federal, State, regional, and local programs to prevent and control air pollution." 42 U.S.C. § 7401(a)(4).  In harmony with this state-federal cooperation, each of the Plaintiff States enacted regulations to curb venting, limit flaring, and encourage the economic capture and use of natural gas. See N.D.C.C. § 38-08-06.4, N.D.A.C. 4 43-02-03-28; Mont. Admin. Rs. 17.8.1603, 17.8.1711, 36.22.1220, 36.22.1221; TEX. ADMIN. CODE §§ 3.1–3.107; Wyo. Ann. Stat. §§ 30-5-102, 30-5-104; Utah Code § 19-2-101, Utah Admin. Code R649-3-20.

[¶22]   The 2024 Rule is challenged here because it "extends to operations on non-Federal lands where Federal oil and gas is produced under a unit or communitization agreement." 89 Fed. Reg. 25383. As defined in the 2024 Rule's Executive Summary, the 2024 Rule "aims to reduce the waste of natural gas from oil and gas leases administered by the BLM." 89 Fed. Reg. 25378. It is regulations by BLM of an area that is already regulated by the CAA and State laws meant to protect the environment. It identifies the three sources of gas "lost during oil and gas exploration and production activities" as "venting, flaring, and leaks." Id. "Venting is the intentional release of gas into the atmosphere during operations, such as liquids unloading." Id. "Leaks are the unintentional release of gas into the atmosphere from production equipment." Id. The 2024 Rule asserts "vented

. . . gas wastes valuable publicly or Indian owned resources that could be put to productive use, deprives American taxpayers, Tribes, and States of substantial royalty revenues" and "vented . . . gas also contributes to climate change." 89 Fed. Reg. 25382. The 2024 Rule notes, "[h]owever, as noted elsewhere, this final rule is justified not by any ancillary effects on air quality or climate change, but solely on the basis of waste prevention—an area where the BLM as independent statutory to regulate." 89 Fed. Reg. 25382 n.119. The flaring limits and other bureaucratic requirements imposed by the 2024 Rule are unsupported by ancillary environmental benefits. They conflict with other federal and state laws, and they add nothing more than a layer of federal regulation on top of existing federal regulation.

[¶23]    The 2024 Rule found oil and gas production has significantly increased in recent years due to technological advances. 89 Fed. Reg. 25380. As part of the increase, there has been additional waste of natural gas through venting and flaring, which is sometimes necessary in the process. Id. The 2024 Rule provides three "other major sources" of wasted gas as delineated through "recent studies": (1) "emissions from natural-gas-activated pneumatic equipment," (2) "venting from oil storage tanks," and (3) "equipment leaks." 89 Fed. Reg. 25382. "BLM has estimated 36.2Bcf of methane was emitted from pneumatic controllers and 4.9 Bcf of methane was emitted from equipment leaks at upstream oil and gas production sites in the United States in 2019." Id. BLM also estimated approximately 0.86 Bcf of gas was lost from equipment leaks at Federal natural gas production sites not subject to the State or EPA requirements. Id. Approximately 17.9 Bcf of natural gas was lost from storage tanks in 2019 from Federal and Indian lands. Id. Putting this all together, the 2024 Rule estimates the total loss of gas to be valued at $53.7 million. Id.

[¶24]   Relevant here, the 2024 Rule mandates flaring of excess gas over venting:

**§ 3179.50 Safety**

> (a) The **operator must flare, rather than vent,** any gas that is not captured, **except when**:
>> (1) Flaring the gas is technically infeasible, such as when volumes are too small to flare;
>> (2) Under emergency conditions, the loss of gas is uncontrollable, or venting is necessary for safety;
>> (3) The **gas is vented through normal operation of natural-gas-activated pneumatic controller or pump**;
>> (4) The **gas is vented from an oil storage tank**;
>> (5) The gas is vented during downhole well maintenance or liquids unloading activities performed in compliance with § 3179.91;
>> (6) The **gas is vented through a leak**;
>> (7) Venting is necessary to allow non-routine facility and pipeline maintenance, such as when an operator must, upon occasion, blow-down and depressurize equipment to perform maintenance or repairs; or
>> (8) A release of gas is necessary and flaring is prohibited by Federal, State, local, or Tribal law or regulations, or enforceable permit term.

89 Fed. Reg. 25430 (emphasis added).

[¶25]   The 2024 Rule is not reasonably explained. The 2024 Rule generically states a major source of gas wasted due to venting and flaring is during production and exploration. However, the Rule does not provide any specific information as to precisely when in the complicated process that waste occurs. Moreover, the 2024 Rule is unlikely to remedy the harm caused by pneumatic equipment, storage tanks, and other equipment leaks when venting because a "leak" is expressly authorized.

[¶26]   In addition, the 2024 Rule offers no rationale why flaring is more economically productive than venting. The Defendants repeatedly claim the 2024 Rule will provide a significant source of royalty income in excess of $51 million, but the 2024 Rule and the Defendants fail to provide any explanation why royalties could not be collected pursuant to the IRA's mandate to charge royalties on vented gas in addition to flared gas. Indeed, "[f]or waste minimization and resource

conservation purposes, no difference exists between eliminating excess methane by venting it or flaring it – the same amount is wasted in either event." <u>Wyoming v. U.S. Dep't of the Interior</u>, 493 F. Supp. 3d, 1046, 1068 (D. Wyo. 2020).

[¶27]    The 2024 Rule also claims requiring flaring over venting fulfills its "obligation to protect local public health and safety." 89 Fed. Reg. 25409. But the justification fails because BLM has no congressional mandate to protect local public health and safety, at least in terms of its gas waste management authorization. This justification is predicated on BLM's own internal regulations, 43 CFR 3162.5-3, 3163.1(a)(3), as noted in the 2024 Rule. 89 Fed. Reg. 25409 n.145. Even if there was a "health and safety" mandate, the 2024 Rule assumes vented gas is more detrimental to public health and safety than flaring, but it does not explain how. Assuming venting is more detrimental than flaring, the Defendants do not explain why the existing state and federal regulations that address their same concerns and arise out of the CAA are inadequate. The 2024 Rule cites to a source from 1980 for the proposition that it is safer for operators, but does not explain how this source is still valid considering all the technological advances that have been made in the field that require this mandate. <u>Id.</u> at 25409 n.147.

[¶28]    The generic description of wasted gas from oil production and exploration is inadequately explained, leaving the Court to conclude the major sources of wasted gas are those noted in "recent studies," even though the footnote only cites to one 2018 article. <u>See id.</u> at 25382 n.21. The exemptions to the flaring requirement are both inadequately explained and inherently contradictory to the purported "studies" the 2024 Rule relies on to justify the "other major sources" of lost gas. If vented gas from natural-gas-activated pneumatic controller or pumps, oil storage takes, or gas vented through leaks are a significant source of gas waste relied upon to justify the 2024 Rule, it makes little sense to exempt those sources of venting from the flaring requirement. Indeed, the

waste coming from those sources are by their very nature "leaks" and not purposefully wasteful emissions. The 2024 Rule fails to explain why these three sources are of such significance to support the entire regulation but then the same sources (and more) are exempted from flaring.

[¶29]    The 2024 Rule also fails to explain how flaring is simultaneously required but then limits the amount of gas permitted to be flared with a risk of wells being shut-in or production curtailed by BLM. See 43 C.F.R. § 3179.70(a)-(b). The 2024 Rule claims the curtailing or shutting-in of wells would be "necessary to avoid the undue waste of Federal or Indian gas." 43 C.F.R. § 3179.70(b). But this contradicts the purpose of the 2024 Rule in collecting royalties on flared gas, which is specifically mandated by the IRA.

[¶30]    Accordingly, Plaintiffs have shown they are likely to succeed on the claim that the 2024 Rule is arbitrary and capricious.[6]

### C. Threat of Irreparable Harm

[¶31]    Plaintiffs argue they will suffer irreparable harm to their sovereign authority because the 2024 Rule undermines the States' authority to be the primary regulator of the air quality within their borders under the CAA's cooperative federalism framework. Plaintiffs also contend they will suffer irreparable economic harm based upon decreased state revenue from royalties and extraction taxes caused by decreased development of oil and gas on federal and Indian lands.

[¶32]    Defendants argue Plaintiffs will not suffer irreparable harm to their sovereign authority because (1) Plaintiffs are simply seeking to relitigate an issue determined by the Wyoming court and (2) BLM's exercise of its authority to collect royalties from gas production on federal land

---

[6] The Court declines Plaintiffs' invitation to consider whether the stated purpose of the 2024 Rule is simply a pretext for BLM's desire to mandate flaring over venting for climate change purposes. At this early stage, it is sufficient to conclude the 2024 Rule is arbitrary and capricious for failing to adequately explain its reasoning.

does not impair the States' sovereign authority. Defendants also argue the States will not suffer unrecoverable economic harm.[7]

[¶33]    The threat of irreparable harm weighs in favor of granting the preliminary injunction because the States' sovereign authority, as recognized by the CAA, is likely usurped by the 2024 Rule. The purpose of injunctive relief is to provide a remedy for an irreparable harm that has inadequate legal remedies. Celco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987). "When there is an adequate remedy at law, a preliminary injunction is not appropriate." Watkins Inc., 346 F.2d at 844. In other words, "[i]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." General Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). Courts can presume irreparable harm if the movant has established a probability of success on the merits of their claim. See Calvin Klein, 815 F.2d at 505 (Courts can "presume irreparable injury from a finding of probable success in proving likelihood of confusion."); Kodiak Oil & Gas Inc. v. Burr, 303 F. Supp. 3d 964, 984 (D.N.D. 2018) ("[A] district court can presume irreparable harm if the movant has a likelihood of success on the merits."). Courts have considered loss of sovereignty as an irreparable harm. See Kansas v. United States, 249 F.3d 1213, 1227 (10th Cir. 2001) (recognizing Kansas's harm to its sovereign interest sufficiently irreparable to be heard on the merits of Kansas's claim); Akiachak Native Community v. Jewell, 995 F. Supp. 2d 7, 17 (D.D.C. 2014) (recognizing the irreparable harm to state sovereignty in the face of federal

---

[7] Plaintiffs have asserted they have standing to challenge the 2024 Rule. Defendants largely do not dispute this claim. However, in arguing Plaintiffs will not suffer irreparable harm, Defendants argue Plaintiffs do not suffer sufficient harm for standing purposes. Because the Court concludes there is a threat of irreparable harm to the Plaintiffs' sovereignty, there is sufficient harm for purposes of standing.

regulation); <u>Georgia v. Pruitt</u>, 326 F. Supp. 3d 1356, 1367 (S.D. Ga. 2018) ("Loss of sovereignty is an irreparable harm.").

[¶34]    Each of the Plaintiff States have statutes or regulations regulating the venting and flaring of natural gas. N.D.C.C. § 38-08-06.4, N.D.A.C. 4 43-02-03-28; Mont. Admin. Rs. 17.8.1603, 17.8.1711, 36.22.1220, 36.22.1221; TEX. ADMIN. CODE §§ 3.1–3.107; Wyo. Ann. Stat. §§ 30-5-102, 30-5-104; Utah Code § 19-2-101, Utah Admin. Code R649-3-20. For example, North Dakota permits unlimited flaring of "gas produced with crude oil" for a "one-year period from the date of first production from the well." N.D.C.C. § 38-08-06.4(a). Once the one-year period has passed, flaring is no longer permitted.

N.D.C.C. § 38-08-06.4(b).

[¶35]    The 2024 Rule, however, specifically states:

> The BLM developed this rule based on its statutory authority to prevent and reduce the waste of natural gas produced from Federal and Indian (not State) land through improved regulatory requirements pertaining to venting, flaring, and leaks, while ensuring a fair return to the American public. **It does not override the States' or Tribes' more stringent requirements for flaring** and gas capture or waste prevention measures on State or Indian lands. Operators with leases on Federal lands must comply with the Department's regulations and with **State requirements to the extent they do not conflict with the Department's regulations**.

89 Fed. Reg. at 25393 (emphasis added).

[¶36]    Here, the States' sovereign interests are compromised by the 2024 Rule. BLM haphazardly adds more stringent flaring restrictions and bureaucratic hoops the States have to jump through when they each have crafted a plan in the cooperative federalism system with the EPA. Now, BLM seeks to add even more requirements on flaring and venting. Sections 3162.3-1(d)(4) and (j)(3), for example, require operators to submit a "Waste Management Plan" with applications for permits to drill that contain certain certifications. 43 C.F.R. § 3162.3-1. These new requirements do nothing more than delay oil and gas production in the Plaintiff States who have already worked

out regulatory approval from the EPA. <u>See</u> Doc. No. 10-2, ¶ 13. In addition, Section 3179.70(b) gives BLM authority to shut-in production as necessary to avoid the purported undue waste of Federal and Indian gas. This directly conflicts with North Dakota's laws and regulations that do not have volume limits on flaring of gas. <u>See</u> N.D.C.C. § 38-08-06.4(6); N.D.A.C. § 43-02-03-28.

[¶37]   Finally, the Rule has omitted any possibility for variances from the Plaintiff States' requirements and simply states the 2024 Rule "does not preempt more stringent requirements for flaring, gas capture, or waste prevention under State or Tribal law, as appropriate." 89 Fed. Reg. 25393. This now requires the Plaintiff States to make burdensome determinations of potential areas of conflict where the States have traditionally had primacy of regulation under the CAA. The States' regulatory schemes have now been replaced by an overbearing bureaucratic mandate which is a direct affront to State sovereignty as recognized under the CAA.

[¶38]   In short, Plaintiffs have their own sovereign interest in their cooperative federalism plans with the EPA to regulate under these circumstances. The 2024 Rule seeks to essentially nullify certain portions of those plans in favor of its thinly supported and largely unexplained flaring rules. It is harmful to the state air quality laws and the unique regulatory environment each Plaintiff State has established to protect its citizens and economy. Furthermore, given the likelihood of success on the merits, the Court may also presume the harm suffered by the Plaintiffs is irreparable. <u>Calvin Klein</u>, 815 F.2d at 505.

[¶39]   This conflict is supported by the record provided by Plaintiffs. <u>See</u> Doc. No. 10-2, ¶¶ 12–15 (Lynn Helms, Director of the North Dakota Industrial Commission's Department of Mineral Resources, explaining how the 2024 Rule conflicts with North Dakota's laws and regulations regarding flaring); Doc. No. 10-3, ¶¶ 12–17 (Redge Johnson, Director of the State of Utah Public Lands Policy Coordinating Office and Deputy Director of the Utah Department of Natural

- 18 -

Resources, explaining how the 2024 Rule conflicts with Utah's laws and regulations); Doc. No. 10-4, ¶¶ 9–13 (David Glatt, North Dakota Department of Environmental Quality, explaining how the 2024 Rule conflicts with North Dakota law and rules); Doc. No. 10-5, ¶¶ 10–14 (Todd Parfitt, Director of the Wyoming Department of Environmental Quality, explaining how the 2024 Rule conflicts with Wyoming's laws and regulations).

[¶40]    Defendants invite the Court to disregard these declarations arguing they are impermissible expert testimony opining on legal issues. These declarations, however, are not expert testimony. Rather, they are the views of individuals who work routinely on these and related matters who know the regulatory system well. The declarations show how the Plaintiffs anticipate their state laws and regulations will be impacted by the 2024 Rule. At this early stage in the litigation, these declarations are helpful in determining the scope of the purported conflict at issue. See West Virginia v. EPA, 669 F. Supp. 3d 781, 807–17 (considering several declarations from state officials when deciding whether the plaintiffs had established a threat of irreparable harm from the imposition of a new federal rule).

[¶41]    Defendants argue the Plaintiffs are simply trying to relitigate an issue they lost in the Wyoming litigation at the preliminary injunction stage. In the Wyoming case, the court found the plaintiffs did not suffer irreparable harm when determining whether to issue a preliminary injunction. 2017 WL 161428 at *10–11. In finding this, the court concluded (1) the plaintiffs' regulations would operate in tandem with the 2016 Rule and did not appear to conflict with the 2016 Rule; (2) BLM was required to coordinate with States when an enforcement proceeding would adversely affect production of state or private mineral interest; and (3) there was no express announcement by Congress the regulated activities are not subject to federal regulation. Id. at *10.

[¶42]   This case is different from the <u>Wyoming</u> preliminary injunction order. As noted, there is a conflict between the Plaintiffs' regulations and the 2024 Rule and will only operate in tandem here absent a conflict. The 2024 Rule also has no coordination requirement, unlike the 2016 Rule. Because of these differences, the <u>Wyoming</u> preliminary injunction order is distinguishable and wholly unpersuasive in its analysis on irreparable harm.

[¶43]   Accordingly, this Court concludes Plaintiffs will suffer an irreparable harm if the 2024 Rule is not enjoined. This factor, therefore, weighs in favor of granting an injunction.

### D.  Balance of Harms

[¶44]   "Once the court has determined that there is a threat of irreparable harm to the moving party, it must balance this harm with any injury an injunction would inflict on other interested parties." <u>Richland/Wilkin Joint Powers Authority v. U. S. Army Corps of Engineers</u>, 826 F.3d 1030, 1039 (8th Cir. 2016).

[¶45]   On balance, the harms favor the Plaintiffs. The risk of irreparable harm has been shown at this stage. The 2024 Rule is a significant impingement on the Plaintiffs' sovereign rights. The Defendants will suffer little, if any, harm by preserving the status quo pending consideration of the claims on the merits. Accordingly, the balance of harms weighs in favor of granting an injunction.

### E.  Public Interest

[¶46]   "For the court to grant an injunction, the moving party must establish that the entry of relief would serve the public interest." <u>North Dakota v. E.P.A.</u>, 127 F. Supp. 3d 1047, 1059 (D.N.D. 2015) (citing <u>Dataphase</u>, 640 F.2d at 113).

[¶47]   On balance, the public interest favors the Plaintiffs. "There is generally no public interest in the perpetuation of unlawful agency action." <u>League of Women Voters of United States v.</u>

- 20 -

<u>Newby</u>, 838 F.3d 1, 13 (D.C. Cir. 2016). The likelihood of success on the merits here is a "strong indicator" the public interest favors enjoining a likely illegal administrative action. <u>Id.</u> This factor favors enjoining the 2024 Rule due to the "public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" <u>Id.</u> (quoting <u>Washington v. Reno</u>, 35 F.3d 1093, 1103 (6th Cir. 1994)).

### F. Severability

[¶48]   In the event an injunction is ordered, Defendants request the 2024 Rule be severed for purposes of enforcement. Neither party has identified which specific provisions ought to be severed. Defendants appear to ask the Court to limit the applicability of the injunction to the Plaintiff States. The Plaintiffs did not address this in their Reply.

[¶49]   By its own terms, the 2024 Rule is severable as to parties and sections. 43 C.F.R. § 3179.11 ("If a court holds any provisions of the regulations in this subpart or their applicability to any person or circumstances invalid, the remainder of this subpart and its applicability to other people or circumstances will not be affected.").

[¶50]   There has been no request by the Plaintiffs to broaden the scope of the injunction beyond the Parties to this case. Hence, keeping the scope limited to the Parties is appropriate under the circumstances.

[¶51]   As to severance of certain provisions, Plaintiffs have requested the 2024 Rule be enjoined. Defendants have not identified which provisions of the 2024 Rule should be severed. Because there has been no attempt by either party to identify severable portions, the Court will not sever the 2024 Rule as it is enjoined from enforcement against the Plaintiff States.

### G.  Security

[¶52]    Defendants ask the Court for further briefing on the issue of a security bond under Rule 65 of the Federal Rules of Civil Procedure. Plaintiffs ask the Court to decline entering any bond requirement.

[¶53]    Rule 65(c) provides the Court discretion to order a security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

[¶54]    A security bond in this case is not necessary. The royalties the Defendants claim they will potentially lose are immaterial. Even with permitting the venting of gas, the IRA requires BLM to collect royalties on those lost gasses. See 30 U.S.C. § 1727(a). Any loss of royalties for failure to collect on vented gas is due solely to BLM's inaction. Accordingly, a security bond will not be required in this case.

<u><strong>CONCLUSION</strong></u>

[¶55]    The Court has reviewed the entire record and the factors for granting a preliminary injunction and finds each factor weighs in favor of enjoining the application of the 2024 Rule against each of the Plaintiff States. Accordingly, the Plaintiffs' Motion for Preliminary Injunction is **GRANTED**. It is **ORDERED** that the Defendants are **ENJOINED** from enforcing the 2024 Rule against the States of North Dakota, Montana, Texas, Wyoming, and Utah pending the outcome of this litigation.

[¶56]    **IT IS SO ORDERED**.

[¶57]    DATED September 12, 2024.

Daniel M. Traynor, District Judge
United States District Court

- 22 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

|  |  |
|---|---|
| THE STATE OF NORTH DAKOTA, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF INTERIOR, *et al.*,<br><br>    Defendants. | No. 1:24-cv-66-DMT-CRH |

## DEFENDANTS' NOTICE OF APPEAL

Pursuant to Rules 3 and 4(a) of the Federal Rules of Appellate Procedure, Defendants, the United States Department of the Interior, Deb Haaland, in her official capacity as the Secretary of the Interior, the Bureau of Land Management ("BLM"), Tracy Stone-Manning in her official capacity as Director of BLM, and Sonya Germann, in her official capacity as Director of BLM Montana/Dakotas, hereby give notice that they are appealing to the United States Court of Appeals for the Eighth Circuit the *Order Denying Motion to Change Venue and Granting Motion for Preliminary Injunction* entered on September 12, 2024. Dkt. 54.

Respectfully submitted this 11th day of November, 2024.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/Erik Van de Stouwe*
ERIK VAN DE STOUWE
Trial Attorney

1

U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel.: (202) 305-0247
Erik.Van.de.Stouwe@usdoj.gov

*Counsel for Defendants*

2

## U. S. COURT OF APPEALS - EIGHTH CIRCUIT
## NOA SUPPLEMENT

*Please note any additions or deletions to the style of the case from the style listed on the docket sheet.*

Case No.  1:24-cv-00066                State of North Dakota, State of Montana, State of Texas. et al. v.

The United States Department of Interior, Debra Ann Haaland, et al.

Length of trial:   None

Financial Status:        Fee Paid?                                    ☐ Yes    ☑ No
                         If **NO**, has IFP been granted?             ☐ Yes    ☑ No
                         Is there a pending motion for IFP?           ☐ Yes    ☑ No

Are there any other pending post-judgment motions?        ☐ Yes    ☑ No

Please identify the court reporter:        ☐ No hearings held

     Name:  Ronda Colby                          Kristen Keegan
                                                 PO Box 1193
     Address:   PO Box 1193, Bismarck, ND 58502  Bismarck, ND 58502
                                                 701-530-2300

     Telephone Number:   701-530-2300

Criminal cases only:
     Is the defendant incarcerated?     ☐ Yes (include address below)        No ☐

     Please list all other defendants in this case if there were multiple defendants.

**SPECIAL COMMENTS:**

Notice of Interlocutory Appeal filed by the United States of America. Filing fee is waived.